JAOPCONC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          19 CR 651 (LTS)

MIRCEA CONSTANTINESCU, et al.,

          Defendants.

------------------------------x

                         New York, N.Y.
                         October 24, 2019
                         10:39 a.m.

Before:

              HON. LAURA TAYLOR SWAIN,

                          District Judge

                  APPEARANCES

GEOFFREY S. BERMAN,
    United States Attorney for the
    Southern District of New York
ROBERT B. SOBELMAN
SAMUEL P. ROTHSCHILD
DANIEL LOSS
    Assistant United States Attorneys

KARLOFF C. COMMISSIONG
    Attorney for Defendant Nikolaos Limberatos

JAKE LASALA
    Attorney for Defendant Cristian Costea

KENNETH A. PAUL
    Attorney for Defendant Ionela Constantinescu

DAVID BERTAN
    Attorney for Defendant Theofrastos Lymberatos

JAOPCONC

APPEARANCES (Continued)

LISA SCOLARI
     Attorney for Defendant Andrew Eliopoulos

ALAN M. NELSON
     Attorney for Defendant Peter Samolis

JACK G. GOLDBERG
     Attorney for Defendant Kelly Karki Lam

VICTOR E. ROCHA (Via telephone)
     Attorney for Defendant George Serban

DIANE FERRONE
     Attorney for Defendant Iuliana Mihailescu

EDWARD V. SAPONE
     Attorney for Defendant Florian Claudiu Martin


ALSO PRESENT:  BRUNO BLUMENFELD, Romanian-language Interpreter

               TASK FORCE OFFICER JOHN HOFFMAN, FBI
               TASK FORCE OFFICER JOHN REUTHER, FBI

JAOPCONC

1        (In open court)

2        THE COURT:  Good morning.  Would everyone, other than

3   counsel, please be seated.

4        (Case called)

5        THE COURT:  Counsel, would you please state your

6   appearances.

7        MR. SOBELMAN:  Robert Sobelman, Samuel Rothschild and

8   Daniel Loss for the United States, and we're joined at counsel

9   table by Task Force Officers John Hoffman and John Reuther,

10   Federal Bureau of Investigation.  Good morning, your Honor.

11        THE COURT:  Good morning, Mr. Sobelman, Mr. Rothschild

12   Mr. Loss and Officers Hoffman and Reuther.  Please be seated.

13        MR. COMMISSIONG:  On behalf of Nikolaos Limberatos,

14   Karloff Commissiong.  Good morning, your Honor.

15        THE COURT:  Good morning, Mr. Commissiong, and good

16   morning, Mr. Limberatos, wherever you may be seated.  Good

17   morning, Mr. Limberatos.

18        MR. LASALA:  Good morning again, your Honor.  Jake

19   Lasala for Mr. Cristian Costea, who's sitting in the first row.

20        THE COURT:  Good morning again, Mr. Lasala, and

21   Mr. Costea.

22        MR. PAUL:  Good morning, your Honor.  Kenneth Paul for

23   Ionela Constantinescu.

24        THE COURT:  Good morning, Mr. Paul, and

25   Ms. Constantinescu, good morning.

JAOPCONC

1          MR. BERTAN:  David Bertan appearing on behalf of

2     Theofrastos Lymberatos.

3          THE COURT:  Good morning, Mr. Bertan, and good morning

4     again, Mr. Lymberatos.

5          MS. SCOLARI:  Good morning, your Honor.  Lisa Scolari

6     for Andrew Eliopoulos, who is in the front row of the audience.

7          THE COURT:  Good morning, Ms. Scolari, and good

8     morning, Mr. Eliopoulos.

9          MR. NELSON:  Good morning, your Honor.  Alan Nelson,

10     appearing as retained counsel, substituting on behalf of

11     Michael Sporn on behalf of Peter Samolis, with the Court's

12     permission.

13          THE COURT:  So first, good morning, Mr. Nelson.  Good

14     morning, Mr. Samolis.

15          And, Mr. Samolis, Mr. Sporn had been appointed to

16     represent you as court-appointed CJA counsel.  Have you

17     retained Mr. Nelson to represent you?

18          DEFENDANT SAMOLIS:  Yes, your Honor.

19          THE COURT:  Do you understand that you are solely

20     responsible for any fees associated with Mr. Nelson's

21     representation?

22          DEFENDANT SAMOLIS:  Yes, your Honor.

23          THE COURT:  And do you wish me to relieve Mr. Sporn of

24     court-appointed counsel responsibility for you?

25          DEFENDANT SAMOLIS:  Yes, your Honor.

JAOPCONC

1          THE COURT:  Thank you.  I will approve that

2     application, and enter an order regarding Mr. Sporn.   Thank

3     you, Mr. Samolis.  You may be seated.

4          And thank you, Mr. Nelson.

5          MR. NELSON:  Thank you, your Honor.

6          MR. GOLDBERG:  Good morning, Judge.  Jack Goldberg,

7     and I'm representing Kelly Lam, who is seated in the second

8     row.

9          THE COURT:  Good morning, Mr. Goldberg.  Good morning,

10    Ms. Lam.

11         MS. FERRONE:  Good morning, your Honor.  Diane

12    Ferrone, Cardi and Edgar, standing in for Dawn Cardi, who is

13    out of the country on behalf of Iuliana Mihailescu, who is on

14    the side in the second row.

15         THE COURT:  Good morning, Ms. Ferrone.  Good morning,

16    Ms. Mihailescu.

17         MR. ROCHA:  Good morning, your Honor.

18         THE COURT:  Just one moment.  I'm about to get to you,

19    Mr. Rocha.

20         MR. ROCHA:  Sorry.

21         MR. SAPONE:  Edward Sapone for Florian Martin, seated

22    to my left, and we have an interpreter here to assist us.

23         THE COURT:  Good morning, Mr. Sapone.  Good morning,

24    Mr. Martin.

25         And, Mr. Blumenfeld, you're interpreting today from

JAOPCONC

1    Russian?

2              THE INTERPRETER:  Romanian.

3              THE COURT:  Romanian.

4              And so, Mr. Martin, are you listening in English, or

5    are you using the interpreter?

6              DEFENDANT MARTIN:  I will use the interpreter.

7              THE COURT:  Very well.  Have you had any difficulty

8    understanding the interpreter so far?

9              DEFENDANT MARTIN:  No, not at all.

10             THE COURT:  Very well.  If you have any difficulty

11   understanding the interpreter, please let Mr. Sapone know, or

12   raise your hand.  Is that acceptable?

13             DEFENDANT MARTIN:  Yes, indeed.

14             THE COURT:  Thank you.

15             And now, Mr. Rocha.

16             MR. ROCHA:  Thank you, your Honor.  Good morning.  Vic

17   Rocha on behalf of George Serban, whom I believe should be

18   somewhere in that courtroom.

19             THE COURT:  He is, indeed, standing up.  So good

20   morning, Mr. Serban, and good morning, Mr. Rocha.

21             MR. ROCHA:  Thank you, your Honor.

22             THE COURT:  And so, Mr. Serban, you had been appointed

23   a court-appointed counsel in Florida.  Have you retained

24   Mr. Rocha to represent you?

25             DEFENDANT SERBAN:  Yes.

JAOPCONC

1          THE COURT:  And do you understand that you will be

2     solely responsible for any fees associated with representation

3     by Mr. Rocha?

4          DEFENDANT SERBAN:  Yes, your Honor.

5          THE COURT:  Very well, then.  So I should not maintain

6     court-appointed counsel for you; is that correct?

7          DEFENDANT SERBAN:  Thank you.

8          THE COURT:  Thank you.  You can be seated, Mr. Serban.

9          All right.  And greetings to the family members and

10    friends who are here in the courtroom.

11         Any victims who are here in the courtroom, thank you

12    all for coming to court.

13         So we have dealt with the interpreter situation.

14         Now, Mr. Serban and Ms. Ionela Constantinescu have not

15    yet been interviewed by pretrial services; so the pretrial

16    services department requests that, immediately after this

17    conference, you go for the interview.

18         Ms. Ng, what floor is that, 7th floor?

19         THE DEPUTY CLERK:  Five.

20         THE COURT:  Fifth floor of the Worth Street elevators?

21         THE DEPUTY CLERK:  Yes.

22         THE COURT:  All right.  So after this conference, you

23    will need to go down to, I guess, the first floor, transfer to

24    the other elevator bank, go to the fifth floor to be

25    interviewed by pretrial services department.

JAOPCONC

```
1              And I see that Ms. Constantinescu is nodding.
2              MR. PAUL:  It's on this side, your Honor.
3              MR. BERTAN:  It's on this side.
4              THE COURT:  Okay.  Shows what I know.  So they just
5    have to go to the eighth and change to the local elevator?
6              MR. BERTAN:  Yes.
7              THE COURT:  All right.  Will someone undertake to make
8    sure -- I know that Mr. Serban's counsel is not here; so would
9    Ms. Constantinescu's counsel --
10             MR. PAUL:  I will.  I'll take them down there.
11             THE COURT:  Thank you so very much.
12             MR. ROCHA:  Thank you.
13             THE COURT:  Now, it is not clear to me whether
14   Mr. Eliopoulos, Mr. Serban and Ms. Constantinescu -- I will get
15   it right -- have been arraigned.  Do we need to do arraignment
16   here this morning?
17             MR. SOBELMAN:  Your Honor, Ms. Constantinescu and
18   Mr. Serban do need to be arraigned.  Our recollection is that
19   Mr. Eliopoulos was arraigned in magistrate's court.  There's
20   certainly no harm to do it again, if there's uncertainty.
21             THE COURT:  And who is representing Mr. Eliopoulos?
22             MS. SCOLARI:  I am.  He was arraigned, your Honor.
23             THE COURT:  All right.  So we need to arraign
24   Mr. Constantinescu and Mr. Serban.  So just one moment.
25             So Mr. Rocha is on the phone, and so Mr. Paul is here.
```

JAOPCONC

1          So first, Mr. Paul, would you rise and also Mr. Serban

2     and Ms. Constantinescu.  So Mr. Paul and Mr. Rocha, have you

3     reviewed the indictment in this case, which is No. 19 CR 651.

4          MR. PAUL:  I have my client, your Honor.  She waives

5     the public reading and enters a plea of not guilty.

6          THE COURT:  Mr. Rocha?

7          MR. ROCHA:  Your Honor, on behalf of Mr. Serban, we

8     have reviewed the indictment here in my office.  We would waive

9     its public reading.  We would, at this time, enter a plea of

10     not guilty, request entry of the standing discovery order and

11     request trial by jury.

12          THE COURT:  All right.  Well, discovery order and jury

13     trial requests we don't normally deal with at this juncture; so

14     you're of record making those requests.

15          So, Mr. Serban, have you reviewed the indictment and

16     discussed it with your attorney?

17          DEFENDANT SERBAN:  Yes, your Honor.

18          THE COURT:  Your attorney has indicated you waive the

19     public reading and enter a plea of not guilty; is that correct?

20          DEFENDANT SERBAN:  Yes, it is.

21          THE COURT:  And, Ms. Constantinescu, have you reviewed

22     the indictment?

23          DEFENDANT CONSTANTINESCU:  Yes, I have.

24          THE COURT:  You discussed it with your attorney?

25          DEFENDANT CONSTANTINESCU:  Yes, I did.

JAOPCONC

1          THE COURT:  You understand the charges against you?

2          DEFENDANT CONSTANTINESCU:  Yes.

3          THE COURT:  Do you waive the public reading and wish

4    to enter a plea of not guilty?

5          DEFENDANT CONSTANTINESCU:  Yes.

6          THE COURT:  Very well.  The record will so reflect.

7    Thank you.  You can be seated.

8          Now, may I have a status report?

9          MR. SOBELMAN:  Yes, your Honor.  There were 17

10   defendants that were arrested in this case on October 10th.

11   One of them is pending extradition in Italy.  There are two

12   that are currently detained in the Southern District of

13   Florida, and there are four that are in state custody, and we

14   expect them to be transferred into federal custody in the

15   Southern District of New York within the next three weeks.

16         The remainder of the defendants are present before

17   your Honor today.

18         Based on some conversations with some of the defense

19   counsel, the number of defendants in this case, and the volume

20   of the discovery, which is voluminous, we would suggest to the

21   Court that the Court consider appointing a coordinating

22   discovery attorney.  This government counsel has worked with

23   Emma Greenwood on two other large cases and found it to be a

24   very efficient assistance to both defense counsel and the

25   government and the Court.

JAOPCONC

1          THE COURT:  In a case such as this, I agree that the

2     coordinating attorney is appropriate, and we do have a number

3     of defendants who are represented under the Criminal Justice

4     Act.  So what I will do is work with Jerry Tritz to identify

5     who's available and appropriate as coordinating discovery

6     attorney, and through Mr. Tritz's office there will be outreach

7     to notify everyone.

8          MR. SOBELMAN:  Thank you, your Honor.

9          Our suggestion as next steps are that as soon as the

10    coordinating discovery attorney is identified and appointed, we

11    work with that person to finalize a proposed protective order

12    for your Honor's consideration and for defense counsel to

13    execute.

14         We don't think that's going to be a controversial

15    order, but due to the types of information and materials we

16    have, much of it will be needed to be covered by a protective

17    order due to it containing bank account numbers of victims,

18    victim information, other personal identifying information of

19    victims, as well as other materials that might be law

20    enforcement sensitive.

21         THE COURT:  Yes.

22         MR. SOBELMAN:  Promptly after the order of such a

23    protective order, the government would produce the applications

24    for search warrants, wiretaps, cell site and cell phone

25    location information, PEN registers, essentially any legal

JAOPCONC

1    process we have that pertain to these defendants promptly.  And

2    those, we think, are kind of the most important things for

3    defense counsel to have and think about whether there are any

4    potential motions that might be made in the case, and they also

5    provide a decent overview of a lot of the evidence against the

6    defendants that are charged in this case.

7         And then what we would do is, assuming the Court's

8    okay with this plan, as soon as that's out the door, begin

9    producing on a rolling basis the other aspects of discovery,

10   which would include the actual wiretap recordings and line

11   sheets, financial records, phone records, cell phone location

12   data, PEN register data, pole camera and surveillance footage

13   and photographs.

14        We have several electronic devices we seized in the

15   course of the investigation that would be imaged.  We would

16   turn over the images of those devices.  In addition, there are

17   a number of electronic devices that were seized in connection

18   with the arrests of these individuals, and for some of those,

19   we already have warrants, and we would turn over the images of

20   those devices.  For a few of them, we intend to seek a warrant

21   in the coming days, and assuming that warrant is granted, we

22   would also image and turn over the images of those devices.

23        In addition, there are some search warrant returns

24   from social media accounts and e-mail accounts.  So we don't

25   have an estimate of the number of gigabytes or terabytes.  It

JAOPCONC

1    is extremely extensive.  We will make best efforts to produce

2    it in an organized fashion as efficiently as we can and work

3    with the coordinating discovery attorney to make sure that that

4    process is as smooth as it can be.

5         Our hope is that once the protective order is in

6    place, within a few weeks, maybe a month, we can produce either

7    everything or the vast majority of what is covered under Rule

8    16 because we understand at least some of the defendants in

9    this case will be detained, and even those who are not deserve,

10   you know, a speedy process.  There's also the interest of the

11   public and the victims that we recognize in this case.

12        THE COURT:  Are there any post-arrest statements?

13        MR. SOBELMAN:  I believe there were at least two or

14   three defendants who made post-arrest statements.  We will

15   produce those, we suggest, in the first batch.  So with the

16   wire recordings and things like that, we will produce those

17   just to the defendants who made those statements.

18        THE COURT:  When you say with the first batch, you're

19   meaning after the search warrant applications?

20        MR. SOBELMAN:  No, I mean in the very --

21        THE COURT:  With the search warrant applications?

22        MR. SOBELMAN:  Yes, your Honor.  At that same time, we

23   would produce, at the very beginning of our production of

24   discovery, we would produce those because we understand those

25   are often critical for defense attorneys to have early in the

JAOPCONC

1    case.

2         THE COURT:  Were non-federal investigative authorities

3    involved in preparing this case such that you have an

4    obligation to search for and produce information that may not

5    be in the control currently, or was not in the control, of

6    federal agencies?

7         MR. SOBELMAN:  Yes, to the extent that agencies that

8    worked on this case for the Federal Bureau of Investigation and

9    the New York City Police Department.  For example, Task Force

10   Officers Hoffman and Reuther are dually appointed by both the

11   FBI and the NYPD.

12        I think we probably have all or close to all of what

13   we will be obligated to produce already in the FBI's files.  So

14   I don't think that will slow things down, but we, of course,

15   will make all the efforts we can to expeditiously gather

16   anything that we are required to produce from any other agency

17   that is part of our prosecution team.

18        THE COURT:  And you are mindful of and will be

19   providing your Brady responsibilities in a prompt fashion?

20        MR. SOBELMAN:  Yes, of course, your Honor.

21        THE COURT:  So you've outlined your ability to produce

22   within a month or so, assuming that the coordinating discovery

23   attorney arrangements are put in place promptly and appropriate

24   protective order is negotiated promptly.

25        Have you had any discussions or feedback from defense

JAOPCONC

1   attorneys as to the time that would be appropriate to make

2   meaningful review of this volume of discovery before we come

3   back for another conference?

4           MR. SOBELMAN:  I haven't spoken with all defense

5   counsel.  We spoke to several, and they all agreed that maybe

6   the first week of January would be an appropriate time to come

7   back and, at that point, discuss setting a motion schedule

8   and/or a trial date, whatever your Honor's practice is, and how

9   to next proceed.

10          THE COURT:  Any objection to coming back in the first

11  week of January, Mr. Bertan?

12          MR. BERTAN:  No, your Honor, but just to clarify a

13  couple of points.  One, with regard to the CDA, the CDA is not

14  going to be involved in dealing with the protective order.

15  They'll be bound by it, but the protective order is going to be

16  something that the prosecutors and the defense will work out.

17  I just want to make that clear.

18          MR. SOBELMAN:  No, your Honor, that's not correct.

19  Having worked with Emma Greenwood in two other cases, the

20  coordinating discovery attorney gives input on the protective

21  order because it has to expressly include them.  Otherwise,

22  they don't have the ability to handle the materials, and we

23  actually had to, in another case, get a second protective order

24  because we did not wait for the coordinating discovery attorney

25  to do it.  So I prefer that we wait.

JAOPCONC

1          THE COURT:  So is what you're proposing to do is to

2     coordinate your proposing of the order and outreach to all

3     counsel, including the coordinating discovery attorney, through

4     the coordinating discovery attorney, or are you going to

5     proactively reach out to representing counsel directly with

6     your proposed form of order and make sure that Ms. Greenwood is

7     in the loop before you start producing?

8          MR. SOBELMAN:  What I would propose is, if

9     Ms. Greenwood, or another coordinating discovery attorney, as

10    soon as that person is appointed, I would send them a draft,

11    which I think we can mostly take from the last case I did with

12    her.  I don't think it's something novel.  It won't take any

13    time for us to put together.  Make sure that she, or whoever is

14    appointed, is comfortable with the language that's set forth.

15         As soon as they approve it, which I think would be

16    prompt, we would circulate the draft to all defense counsel for

17    their signature or feedback, if there are any issues.  But

18    again, we don't anticipate the protective order here being

19    controversial.

20         If your Honor would prefer, we can circulate a draft

21    before the coordinating discovery attorney is appointed, but I

22    just don't want to create an inefficiency if whoever the

23    coordinating discovery attorney is has issues with the way that

24    the coordinating discovery attorney part of the order is

25    drafted.

JAOPCONC

 1          THE COURT:  As you say, there will be a coordinating

 2   discovery attorney part of the order that's particular to the

 3   coordinating discovery attorney, but restrictions on client

 4   viewing of material or dissemination of material, that sort of

 5   thing, will affect defense counsel.

 6          MR. SOBELMAN:  Yes.

 7          THE COURT:  And she won't necessarily have a view or

 8   an interest in that, other than logistical.  So since it will

 9   probably take a day or two, at least, to get the coordinating

10   discovery attorney in place, I would suggest that you send your

11   draft out to defense counsel for any feedback, and you can work

12   out defense counsel's issues and be able to make a more

13   informed proposal to the coordinating discovery attorney.

14          MR. SOBELMAN:  Understood, your Honor.  We'll send it

15   out by tomorrow at the latest.

16          THE COURT:  Thank you.  Is that acceptable to defense

17   counsel?

18          MR. BERTAN:  That's fine, your Honor.  We'd like to

19   see it first, that's all.

20          MS. SCOLARI:  Your Honor, I have a request that Court

21   can, obviously, consider by letter, but in the past when

22   there's been a large volume of materials that the government

23   will not allow us to give to our clients, Courts have appointed

24   paralegals to sit with the clients and basically allow them to

25   review the material.

JAOPCONC

1    That can be very time consuming.  I submit to the

2    Court it's not an effective use of assigned counsel's time or

3    the money that is spent to pay us.  Certainly, we would answer

4    any questions the clients have, but in terms of spending hours

5    and hours with the client so that the client can review

6    materials is, I think more cost effective and more effectively

7    done by paralegals, and judges have appointed paralegals for

8    this purpose in the past.

9        THE COURT:  I understand the situation.  I understand

10   the use of paralegals.  Since this is such a large, complex

11   case with a large volume of discovery and likely a large volume

12   of work to be done, I suggest that the CJA counsel immediately

13   reach out to Jerry Tritz to organize budgets.

14       MS. SCOLARI:  Sounds good.  Thank you.

15       THE COURT:  Mr. Sapone?

16       MR. SAPONE:  Yes, your Honor.  Just sort of a

17   collateral minor point.

18       THE COURT:  Would you put your microphone up more

19   straight.  Thank you.

20       MR. SAPONE:  Yes.  The government has said that, as

21   the post-arrest statements that may have been made, they would

22   notify counsel for those defendants, which is entirely

23   appropriate.  I would just ask that if there are any Bruton

24   issues, that is, for example, if Mr. Martin is mentioned in any

25   of those post-arrest statements by others defendants, that we

1    be notified so we can make a proper Bruton application.

2              THE COURT:  Do you have any objection to proceeding in

3    that fashion.

4              MR. SOBELMAN:  Your Honor, we would propose, as in

5    most cases, that is something that is dealt with before trial,

6    not at this stage.  It's something we would give any notice of

7    in advance of a motion in limine they had in mind, which we

8    think is likely far off here.

9              THE COURT:  So your undertaking is to make disclosure

10   of the existence of any Bruton issues well within the time

11   necessary to permit motion practice and reasonable time for

12   trial preparation?

13             MR. SOBELMAN:  Correct, your Honor.  Here there are 17

14   defendants in this case.  There were more than one post-arrest

15   statement, and to disclose them to many or perhaps all when, if

16   one looks at statistics, there likely will not be 17 defendants

17   at trial, it seems inefficient and potentially creates other

18   issues if we do it now, when we could simply do it well in

19   advance of motions in limine, likely months from now when the

20   case is thinner.

21             THE COURT:  That is a prudent approach.  So that's how

22   we will handle it.

23             MR. SAPONE:  Thank you, your Honor.

24             THE COURT:  All right.  So next, let's get the date

25   for the January conference on the record and deal with speedy

JAOPCONC

1    trial exclusion.

2            Ms. Ng, may I have a date, please.

3            THE DEPUTY CLERK:  Thursday, January 9th, 2020, at

4    10:30 a.m.

5            THE COURT:  Is there anyone who has any insurmountable

6    obstacles to January 9th at 10:30?  Seeing no hands, the next

7    conference is set for January 9th, 2020, at 10:30 in the

8    morning.

9            Is there a request for exclusion from speedy trial

10   computations?

11           MR. SOBELMAN:  Yes, your Honor.  The government

12   respectfully requests that the speedy trial time be excluded

13   between today and January 9th, 2020, so the government can

14   gather, produce discovery to defendants, and so that the

15   defendants can begin to review that discovery and discuss and

16   deliberate on whether there are any motions that they might

17   wish to file in this case.

18           THE COURT:  Any objections.

19           MR. SAPONE:  No, your Honor.

20           MS. SCOLARI:  No, your Honor.

21           MR. COMMISSIONG:  No.

22           MR. GOLDBERG:  No.

23           MR. ROCHA:  No objection.

24           THE COURT:  Very well.  The request is granted.  I

25   find that the reasons summarized by Mr. Sobelman that the ends

JAOPCONC

1    of justice served by the granting of an exclusion from the

2    speedy trial computations for the period from today's date

3    through January 9th, 2020, outweigh the best interests of the

4    public and each of the defendants in a speedy trial.

5           Accordingly, that time period is excluded

6    prospectively.

7           Mr. Sobelman, would you please make a statement as to

8    the government's victim identification notification activities

9    to date?

10          MR. SOBELMAN:  Yes, your Honor.  We've begun the

11   process of notifying victims, and we will continue that process

12   as victims are identified.

13          MR. GOLDBERG:  I can't hear you.

14          MR. SOBELMAN:  Sorry.  We have begun the process of

15   notifying victims, and we will continue those efforts

16   consistent with our obligations.

17          THE COURT:  So the victims will be notified of events

18   in the case and hearings as required by law?

19          MR. SOBELMAN:  That's correct, your Honor.  We have an

20   automated system that we are in the process of entering all of

21   the victim contact information for, for those that have been

22   identified, and a letter or electronic notification goes to

23   them as a matter of course whenever a proceeding is scheduled

24   and placed on the docket.

25          THE COURT:  Thank you.  And so there was a bail

1   modification request for Mr. Samolis, and I think I was

2   informed that the government had an objection to it?

3          MR. SOBELMAN:  That's correct, your Honor.

4          THE COURT:  The nature of that objection is?

5          MR. SOBELMAN:  Your Honor, our view is that the

6   conditions we agreed to are necessary and that magistrate judge

7   put them in place at the recommendation jointly of both

8   parties, and that an exception shouldn't be made for

9   entertainment wishes of a defendant.

10          Restrictions on his liberty are necessary and

11   appropriate, and it's unfortunate that he bought tickets to an

12   event, but these are the consequences of engaging in the type

13   of behavior that he has engaged in, and it would be a minor

14   inconvenience for him not to attend.

15          THE COURT:  Would Mr. Samolis' counsel wish to be

16   heard further?

17          MR. NELSON:  Yes, your Honor, briefly.

18          The issue, your Honor, would be I would assume not an

19   issue of dangerousness but rather a risk of flight.  He was

20   released on a $100,000 bond, which was signed by two

21   financially secured individuals.  My client resides in Bayside.

22   He's planning to attend this comedy show in Foxwood that he

23   acquired the tickets for three months ago.  He's married.  He's

24   attending with his wife.  They have a 17-year-old child and the

25   paternal mother is watching the child, the grandmother is

JAOPCONC

watching the children.

Certainly, going overnight from Friday and returning on Saturday doesn't create a risk of flight under the instant circumstances, and I'd respectfully ask the Court to permit him to be able to travel for purposes of attending this entertainment event and then returning home with his wife.

THE COURT:  The request for modification to permit attendance at this event, which was booked and arranged in advance of the arrests here, is granted, and I will so order the letter.

MR. NELSON:  Thank you, your Honor.

THE COURT:  Now, the government has appealed certain other bail determinations.  It's my understanding that only one of the defendants as to whom there is an appeal is actually here in New York, and so shall I assume we will just go forward with that one appeal.

MR. SOBELMAN:  Your Honor, we are prepared to go forward with whatever your Honor wishes to go forward with. I've had some other cases where defendants have been detained out of town and the judge has wanted to hear those applications if the defense counsel will waive their appearance, but we are available at the Court's convenience, if your Honor wishes to wait.

We have asked that they be transferred to New York, and expect that to happen in the next two to three weeks, but

JAOPCONC

1   we defer to the Court on the timing of when your Honor hears

2   those appeals.

3          THE COURT:  I understand that Ms. Shellow was here and

4   left because she didn't feel it appropriate to go forward in

5   the absence of her client and the other individual -- who's

6   representing the other individual?

7          MR. SOBELMAN:  I don't believe he's been appointed

8   counsel in this district, Mr. Mircea Constantinescu.  We have

9   not been informed if he has.

10          THE COURT:  Yes.  Apparently, he hasn't been --

11   actually, it does look like CJA counsel was appointed in

12   New York, Mr. Gregory, but retained counsel has made an

13   appearance but is not here today; is that correct?

14          LAW CLERK:  Yes, Judge.

15          THE COURT:  And so we're not in a position to go

16   forward with those two today.

17          MR. SOBELMAN:  Understood, your Honor.  Before we turn

18   to Mr. Limberatos' bail, Ms. Constantinescu and Mr. Serban,

19   this is their first appearance in this district, as your Honor

20   knows, and after they have their pretrial services interview,

21   the government requests that we come back so that a bond can be

22   set for them here because their bond from Florida is satisfied

23   now that they've appeared.

24          We almost certainly will ask for the same conditions.

25   I don't think this will be a controversial appearance, but we

JAOPCONC

1    would ask that we be given the time to have that occur.

2              MR. ROCHA:  Judge, Vic Rocha on behalf of Mr. Serban.

3    I mean, I don't know when counsel wants to have that hearing,

4    but I can be available by phone again later today, if that's

5    necessary.  But tomorrow, I have a sentencing here in Southern

6    District of Florida, and I could probably be up there later in

7    the week next week, if another hearing was required.

8              THE COURT:  To do it this afternoon, you're going to

9    have to do it in magistrate's court because of my schedule.  I

10   have a very full morning and then, unfortunately, I'm not in

11   the courthouse this afternoon.

12             MR. ROCHA:  Okay.

13             MR. SOBELMAN:  Your Honor, we're comfortable with

14   that, but we do think it's important that it occur today

15   because, otherwise, they have no bond, which we think for both

16   of them is quite important.

17             THE COURT:  All right.  So please work with Mr. Paul

18   and be in touch with Mr. Rocha about a time that you would

19   anticipate doing it in magistrate's court, and he would need to

20   appear by phone for that.

21             MR. SOBELMAN:  Yes, your Honor.  We will.

22             THE COURT:  All right.

23             MR. ROCHA:  And, Judge, if I may?  May I be excused at

24   this time?  I do have another hearing that I have to run to

25   here in Florida.

JAOPCONC

| | |
|---|---|
| 1 | THE COURT:  Just one moment.  Mr. Paul has stood up, |
| 2 | and this may be something you need to hear. |
| 3 | MR. PAUL:  No, it just has to do with my client, your |
| 4 | Honor.  She's residing in Florida, and I would ask permission |
| 5 | to waive her presence for the next court appearance in January, |
| 6 | since it is expensive for her to come up here for purposes of |
| 7 | appearances on status conferences. |
| 8 | THE COURT:  Any objection from the government? |
| 9 | MR. SOBELMAN:  Your Honor, we have no objection, but |
| 10 | we note that because she has retained counsel -- sorry, because |
| 11 | she has CJA counsel, she would likely be eligible for the |
| 12 | marshals to pay for her travel, upon an application to your |
| 13 | Honor.  But we have no objection to her not being here, but we |
| 14 | would ask that she be required to participate by phone. |
| 15 | MR. PAUL:  I have no problem with her participating by |
| 16 | phone, your Honor.  It seems silly to put the expense to the |
| 17 | marshals. |
| 18 | THE COURT:  Yes. |
| 19 | MR. PAUL:  And my history with them is that they only |
| 20 | pay for one direction. |
| 21 | THE COURT:  Yes, that is an issue. |
| 22 | MR. PAUL:  They don't pay for round trip. |
| 23 | THE COURT:  Yes, that has certainly been an issue in |
| 24 | the past. |
| 25 | Mr. Rocha? |

JAOPCONC

1          MR. ROCHA:  Judge, I would join in on that motion to

2     have my client appear by telephone, and I'll be there for the

3     hearing on the 9th of January.

4          THE COURT:  Both of the applications are granted, but

5     I ask that counsel follow up with a letter application so that

6     we have a clear record of what I have approved and for which

7     conferences, since we have so many participants in this case.

8          MR. ROCHA:  Thank you, your Honor.

9          THE COURT:  Thank you.  And, Mr. Rocha, if you have

10    nothing else for the group, you are excused.

11         MR. ROCHA:  Thank you, your Honor.

12         THE COURT:  Is there anyone else who has anything that

13    needs to be taken up in this general conference?

14         All right.  The general conference is adjourned, and

15    we will resume shortly for the bail appeal hearing for

16    Mr. Limberatos.  Just follow the instructions of Ms. Ng as to

17    any re-seating.  Thank you.  See you again shortly.  Keep well,

18    everyone.

19         (Adjourned)

20

21

22

23

24

25